**Affirmed and Majority and Concurring Opinions filed May 22, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-16-00593-CR

---

### ALEX VILLALOBOS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the Criminal County Court at Law No. 6
Harris County, Texas
Trial Court Cause No. 2018160**

---

## M A J O R I T Y   O P I N I O N

Appellant Alex Villalobos was convicted of driving while intoxicated. He complains of the sufficiency of the evidence to support the jury's verdict, the trial court's denial of appellant's motion to suppress statements he made while purportedly in custody, and the trial court's denial of appellant's request for a jury instruction on whether his warrantless arrest was illegal because he purportedly was not found in a suspicious place. We affirm.

One morning at approximately 3:00 a.m. in Houston, Texas, a car was struck on the front driver's side by another car. The driver did not see what struck his car, but he believed the crash to be a hit and run.

Fifteen to thirty minutes later, Deputy Shandera arrived. He observed debris and other signs of a collision on the road but no other vehicle. A tire labeled with the emblem for a Toyota vehicle was in the road, still attached to the wheel and the strut.

Shandera asked Deputy Hoang to locate the other vehicle involved in the accident. Other officers were involved in the search. Hoang located appellant in a Toyota Corolla approximately 100 yards away from the crash site in the driveway of a storage facility. The Toyota had rear-end damage and a missing right rear wheel. Hoang placed appellant in his patrol car until Shandera arrived.

Shandera noticed appellant smelled of alcohol and had "glossy, bloodshot eyes." Appellant told Shandera that he was driving from a bar when someone rear-ended him. Shandera conducted field sobriety testing, including horizontal gaze nystagmus (HGN), one-leg stand, and walk-and-turn tests. Appellant displayed six of six clues of intoxication on the HGN test, three of four on the one-legged stand test, and five of eight on the walk-and-turn test.

Shandera then placed appellant under arrest for DWI and conducted an inventory search. He discovered a credit card receipt from a bar where appellant had been a few hours before the accident and a second receipt for beer purchased from Wal-Mart the night before.

## I. Legally Sufficient Evidence of Operating Vehicle while Intoxicated

We first address appellant's challenge to the sufficiency of the evidence in his fourth issue.[1] Appellant argues that the evidence was insufficient because there is no evidence that he was intoxicated at the time he operated the vehicle.

When reviewing the legal sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). Although we consider all evidence admitted at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the factfinder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

A person commits the offense of driving while intoxicated if he is intoxicated while operating a motor vehicle in a public place. Tex. Pen. Code § 49.04(a). For the evidence to be sufficient to support a conviction for driving while intoxicated, there must be a temporal link between a defendant's intoxication and his driving. *Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). But a conviction can be supported solely by circumstantial evidence. *Id*. Being intoxicated at the scene of a

---

[1] Appellant challenges both the legal and factual sufficiency of the evidence. The Court of Criminal Appeals has determined that the *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *See Griego v. State*, 337 S.W.3d 902, 903 (Tex. Crim. App. 2011) (per curiam) (citing *Jackson v. Virginia*, 443 U.S. 307 (1979)). Therefore, in analyzing appellant's challenges to the sufficiency of the evidence, we will apply only that standard of review.

traffic accident in which the actor was a driver is some circumstantial evidence that the actor's intoxication caused the accident. *Id.*

Appellant complains that the State elicited evidence relevant only to the time the field sobriety tests were administered and did not present evidence that appellant was intoxicated at the time he operated his vehicle. Appellant also argues that the State was required to present retrograde extrapolation evidence to establish appellant was intoxicated when he operated his vehicle.[2]

The State argues that considering, among other things, the short amount of time between the crash and appellant's contact with police, the circumstances of the crash, appellant's admission that he drove the Toyota with the missing wheel, signs of intoxication, performance on the field sobriety tests, and the receipts found on appellant, the jury reasonably could have found that appellant was intoxicated at the time he operated his vehicle. The State further contends that it was not required to present extrapolation evidence to establish appellant was intoxicated while driving.

Hoang located appellant in a Toyota near the scene of the accident shortly after the accident and noticed an odor of alcohol on appellant's breath at that time. Appellant admitted that he drove the Toyota with the missing wheel and was in a car accident, and the Toyota sustained extensive damage consistent with the accident scene. When Shandera arrived 15 to 20 minutes later, he observed several signs of intoxication, and appellant admitted he was driving away from a bar when the accident occurred and had in his pocket a bar receipt from a few hours before and a receipt for the purchase of beer from the evening before the accident.[3] Moreover, appellant's performance on the

---

[2] Retrograde extrapolation is the process of computing a person's blood-alcohol level at the time of driving based on the alcohol level found in the person's blood, drawn some time later. *Corley v. State*, No. 14-16-00691-CR, 2017 WL 5473214, at *2 (Tex. App.—Houston [14th Dist.] Nov. 14, 2017, no pet.).

[3] Appellant complains on appeal about the admission of these receipts into evidence, but he

4

field sobriety tests indicated he was intoxicated. The 911 call for the accident was received at 3:12 a.m., and the video of Shandera administering the field sobriety tests is time-stamped as having begun at 3:55 a.m.

All of the above facts establish a temporal link between appellant's intoxication and his driving. Accordingly, from this record, a jury reasonably could infer that appellant was intoxicated when he operated the vehicle. *See id.* at 463; *see also Murray v. State*, 457 S.W.3d 446, 449 (Tex. Crim. App. 2015) (holding that a jury could have inferred the defendant drove his car while intoxicated when (1) he was found inside the vehicle, (2) he was the only person in the vehicle and vicinity, (3) no alcoholic substances or containers were found in the area, and (4) the arresting officer observed several signs of intoxication); *Oliva v. State*, 525 S.W.3d 286, 295 (Tex. App.—Houston [14th Dist.] 2017, pet. granted) (holding jury could have inferred that defendant was operating vehicle while intoxicated because, among other things, he was found in parked, running car in the driver's seat, no other person was in the car, and no evidence suggested that another person had operated the car).

Regarding appellant's argument that the State was required to present extrapolation evidence of his intoxication, appellant has presented no authority supporting this contention, and we have found none. In fact, the State is not required to offer extrapolation evidence to prove a defendant was driving while intoxicated.[4]

---

did not object to their admission at trial and in fact asked the trial court to admit them. *See Heidelberg v. State*, 36 S.W.3d 668, 671 (Tex. App.—Houston [14th Dist.] 2001, no pet.) ("Under the doctrine of invited error, if a party requests or moves the court to make an erroneous ruling, and the court rules in accordance with the request or motion, the party responsible for the court's action cannot take advantage of the error on appeal.").

[4] In this case, the trial court excluded evidence of appellant's blood alcohol concentration, but the jury could convict appellant even without such evidence. *See* Tex. Pen. Code § 49.01(2) (defining "intoxicated" as having an alcohol concentration of 0.08 or more *or* "not having the normal use of mental or physical faculties by reason of the introduction of alcohol" or other substances or combination thereof).

*See Garcia v. State*, 112 S.W.3d 839, 849 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("[N]othing in Texas' statutory framework specifically mandates extrapolation evidence.").

In conclusion, appellant's proximity to the accident, his ownership of the vehicle, the corresponding damages to the other vehicle involved in the crash, his vehicle being of the same make as the car parts surrounding the crash scene, the short amount of time between the crash and appellant's contact with police, the detection of the odor of alcohol on appellant's breath shortly after the accident, the clues of intoxication from the field sobriety tests, and the receipts found in appellant's pocket all provide evidence that appellant was intoxicated while operating the vehicle. We conclude that the combination of these facts is sufficient to support the jury's finding of guilt. We overrule appellant's fourth issue.

## II.    Not in Custody for Purposes of *Miranda*

In his first issue, appellant challenges the trial court's denial of the motion to suppress statements he made to Shandera on the grounds that appellant did not receive *Miranda* warnings or statutory warnings under article 38.22 of the Texas Code of Criminal Procedure before making the statements. He alleges the statements, regarding coming from a bar and involvement in an accident, were obtained while he was in custody and thus should have been excluded.

The warnings set out by the United States Supreme Court in *Miranda* were established to safeguard an unrepresented individual's Fifth Amendment privilege against self-incrimination during custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 442–57, 467–79 (1966); *Kuether v. State*, 523 S.W.3d 798, 805 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). Unwarned statements obtained as a result of custodial interrogation may not be used as evidence by the State in a criminal

proceeding during its case-in-chief. *Miranda*, 384 U.S. at 444; *Keuther*, 523 S.W.3d at 805.

Code of Criminal Procedure article 38.22, section 3, similarly requires that the accused be given statutory warnings "and the accused knowingly, intelligently, and voluntarily waive[ ] any rights set out in the warning[s]" before oral statements made during custodial interrogation are admissible as evidence at trial. Tex. Code Crim. Proc. art. 38.22 § 3(a); *Keuther*, 523 S.W.3d at 805. Our construction of "custody" for purposes of article 38.22 is consistent with the meaning of "custody" for purposes of *Miranda*. *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007).

A trial judge's ultimate custody determination presents a mixed question of law and fact. *Id*. We afford almost total deference to a trial court's custody determination when the questions of historical fact turn on credibility and demeanor. *Id*. at 526–27. Conversely, when the questions of historical fact do not turn on credibility and demeanor, we will review a trial court's custody determination de novo. *Id*. at 527. When, as here, the trial court has made express findings of fact, we view the evidence in the light most favorable to the ruling and determine whether the evidence supports the fact findings. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We sustain the trial court's ruling if it is supported by the record and is correct on any theory of law applicable to the case. *Id*. at 447–48.

Case law segregates interactions between police officers and citizens into three categories: consensual encounters, investigative detentions, and arrests or their custodial equivalent. *Ortiz v. State*, 421 S.W.3d 887, 890 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (citing *Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010)). Both detention and arrest involve a restraint on one's freedom of movement: the difference is in the degree. *Id*. (citing *State v. Sheppard*, 271 S.W.3d 281, 290–91 (Tex. Crim. App. 2008)). An arrest places a greater degree of restraint on an

7

individual's freedom of movement than does an investigative detention. *Id*. Persons temporarily detained for purposes of investigation are not "in custody" for *Miranda* purposes, and thus the right to *Miranda* warnings is not triggered during an investigative detention. *Hauer v. State*, 466 S.W.3d 886, 893 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citing *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984), and *State v. Stevenson*, 958 S.W.2d 824, 829 (Tex. Crim. App. 1997)).

When considering whether a person is in custody for *Miranda* purposes, we apply a "reasonable person" standard, i.e., "[a] person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); *Kuether*, 523 S.W.3d at 808. The inquiry requires an examination of all of the objective circumstances surrounding the questioning at issue. *Herrera*, 241 S.W.3d at 525. The subjective belief of law enforcement officials about whether a person is a suspect does not factor into the custody determination unless an official's subjective belief was somehow conveyed to the person who was questioned. *Id*. at 525–26.

In assessing the circumstances, allowances must be made for the fact that officers must often make quick decisions under tense, uncertain, and rapidly changing circumstances. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997). We therefore look to the reasonableness of the officer's actions, which is to be judged from the perspective of a reasonable officer at the scene, rather than with the advantage of hindsight. *Id*. In this regard, officers may use such force as is reasonably necessary to effect the goal of the detention: investigation, maintenance of the status quo, or officer safety. *Id*. at 117.

Several factors often come into play in considering whether a particular encounter amounted to an arrest or detention, including the amount of force displayed,

the duration of detention, the efficiency of the investigative process and whether it was conducted at the original location or the person was transported to another location, and whether the officer told the detained person that he or she was under arrest or was being detained only for a temporary investigation. *Sheppard*, 271 S.W.3d at 291. "If the degree of incapacitation appears more than necessary to simply safeguard the officers and assure the suspect's presence during a period of investigation, this suggests the detention is an arrest." *Id*.

With these standards in mind, we must examine the facts of this case to determine whether appellant was temporarily detained or under arrest at the time he made the challenged statements. *See Kuether*, 523 S.W.3d at 808. The facts of this case suggest that appellant was not "in custody" for *Miranda* purposes.

The trial court made the following findings that are supported by the record: Hoang responded to a call to assist Shandera in an accident investigation. Shandera asked Hoang to look for the other vehicle involved in the accident. Hoang and another officer went in separate patrol cars. When Hoang noticed a parked Toyota, he pulled in close to the vehicle, and appellant got out. Another patrol car pulled up behind Hoang, and the two patrol cars blocked the exit of the parking lot. Hoang's lights were not activated. Hoang also testified he and appellant spoke, but Hoang did not remember what was said, although Hoang remembered speaking to appellant about the smell of alcohol on his breath. When he noticed the odor of alcohol on appellant and the missing rear tire on the Toyota, Hoang decided to detain appellant and placed him in the back of the patrol car to await the arrival of Shandera, who would continue the investigation. When Shandera finished making notes at the accident scene, he came to Hoang's location and conducted the field sobriety tests on appellant.

When Shandera arrived, appellant was cooperative. Shandera observed that appellant smelled of alcohol and had "glossy, bloodshot eyes." At that time, he decided

9

to conduct a DWI investigation. He asked appellant where he came from, and appellant responded he was coming from a bar down the street when someone rear-ended him. At the time of the conversation, appellant was outside the car and was not handcuffed. Shandera then conducted the field sobriety tests.[5]

Applying the factors referenced above and in the light most favorable to the trial court's findings, we conclude that appellant was being detained and not in custody when he made the statements to Shandera. Officers did not use an undue amount of force to apprehend or hold appellant. The record reflects that once Hoang located appellant, Hoang placed appellant in the back of the patrol car until Shandera, the investigating officer, arrived. Although the record does not show the exact duration of time appellant was in the back of the patrol car, the following events all occurred between 3:12 and 3:55 a.m.: the police received notice of the accident in a 911 call; Shandera arrived at the accident scene and asked for back-up; Hoang responded to the scene and searched for the other driver; Hoang found and detained appellant; Shandera arrived and spoke with appellant; appellant exited the patrol car; and Shandera began administration of field sobriety tests.

Given the totality of the circumstances, it was reasonable for the trial court to conclude that appellant was temporarily detained for the purpose of conducting a DWI investigation and was not in custody for purposes of *Miranda*. *See Kuether*, 523 S.W.3d at 809 (holding that defendant was not in custody when he was held in patrol car,

---

[5] Appellant testified during the suppression hearing that his vehicle had been stopped "[b]etween zero and 25 minutes" before he was approached by police. He said that at least four police cars with their lights on parked behind his car and he could not have driven away even if his car had been operable. Appellant observed "at least four policemen" and stepped out of his car. Appellant initially testified that the officer who approached him said, "I want to talk to you" but changed his testimony to say that the officer told him "come here" and began asking questions. Appellant did not remember whether Hoang was the officer who initially approached him but testified that three or four other officers also approached and all talked to him. Appellant did not feel free to leave. The trial court found appellant's testimony not to be credible.

10

investigating officer approached him shortly thereafter, and after observing defendant, officer decided to conduct DWI investigation); *see also Hauer*, 466 S.W.3d at 891–92 (holding, among other things, that defendant was detained and not in custody while officer cleared accident scene before investigating DWI). We overrule appellant's first issue.

### III.   No Fact Question on Suspicious Place

In his second issue, appellant argues the trial court erred in denying his request for a jury instruction on whether appellant's warrantless arrest was lawful because he purportedly was not found in a suspicious place.[6] He contends he was entitled to this instruction under article 38.23 of the Code of Criminal Procedure. The State argues that appellant was not entitled to a jury question on whether his arrest was legal because that is not a question of fact for the jury to decide but instead must be determined by the trial court. The State further contends that even if the jury were entitled to make such a determination, no fact question exists under these circumstances as to whether appellant was found in a suspicious place. We need not decide whether appellant would be entitled to a jury question if there were a fact question on this issue because we agree with the State that no fact question exists under these circumstances.

As an initial matter, we note that article 38.23 applies only to illegally obtained evidence. *See* Tex. Code Crim. Proc. art. 38.23(a) ("No evidence obtained by an officer

---

[6] Appellant's heading for this argument is entitled "The trial court erred in its refusal to submit a jury instruction as to whether [appellant] was found in a 'suspicious' place, and regarding the legality of [appellant's] arrest." In the body of his argument, appellant argues only that his arrest was unlawful because he was not found in a suspicious place. We limit our discussion accordingly.

The State argues it is not clear whether appellant preserved error on this appellate issue. During the charge conference, defense counsel lodged the following objection: "I object to the jury charge on the grounds that this was a warrantless arrest and we would be entitled a jury instruction on whether the police officer not only had probable cause, but found the defendant under suspicious circumstances in a suspicious place." We presume without deciding that appellant preserved error on this issue.

. . . in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted against the accused on the trial of any criminal case."). It does not address the legality of warrantless arrests. Appellant has cited no authority indicating that he would be entitled to a jury question pertaining to the legality of his arrest based on whether he was found in a suspicious place, and we have found none. Nevertheless, we shall address appellant's argument that his arrest was illegal because he was not found in a suspicious place.

Under Texas law, warrantless arrests are authorized only in limited circumstances outlined primarily in chapter 14 of the Code of Criminal Procedure. *Swain v. State*, 181 S.W.3d 359, 366 (Tex. Crim. App. 2005); *Banda v. State*, 317 S.W.3d 903, 911 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The State contends appellant's arrest was justified under article 14.03(a)(1) of the Code of Criminal Procedure, which authorizes the warrantless arrest of an individual found in a suspicious place under circumstances reasonably showing the individual committed a breach of the peace. *See* Tex. Code Crim. Proc. art. 14.03(a)(1); *Banda*, 317 S.W.3d at 911-12. Driving while intoxicated constitutes a breach of the peace. *Banda*, 317 S.W.3d at 912 n.4.

For a warrantless arrest to be justified under article 14.03(a)(1), the totality of the circumstances must show the existence of probable cause that the defendant committed a crime and the defendant was found in a suspicious place. *Id*. at 912. Although appellant argued below that probable cause did not exist to arrest him, on appeal, he argues only that he was not found in a suspicious place. Accordingly, we limit our discussion to that issue.

Whether appellant was found in a suspicious place is a mixed question of law and fact that we review de novo. *Moss v. State*, 75 S.W.3d 132, 137 (Tex. App.—San

Antonio 2002, pet. ref'd). We defer to the trial court's determination of facts as revealed in the testimony at trial, but review whether, considering those facts, the law was properly applied de novo. *Id.*

Appellant argues his warrantless arrest was illegal because Shandera purportedly admitted at trial that Villalobos was not found in a suspicious place. Few places, if any, are inherently suspicious. *Banda*, 317 S.W.3d at 912 (citing *Dyar v. State*, 125 S.W.3d 460, 464-65 (Tex. Crim. App. 2003)). The determination of whether a place is suspicious requires a highly fact-specific analysis. *Id.* Any place may become suspicious when an individual at the location and the accompanying circumstances raise a reasonable belief that the individual committed a crime and exigent circumstances call for immediate action or detention by the police. *Id.* A key factor used to justify the determination of a place as suspicious is whether the timeframe between the crime and the apprehension of the suspect is short. *Id.*

During trial, Shandera testified that it was not suspicious for appellant to stay near his damaged vehicle after the accident and appellant was arrested only for DWI. However, the following additional facts are undisputed: appellant was found in the vicinity of the accident shortly after the accident having fled the scene, his vehicle was missing a wheel that matched the model of wheel and other debris found at the accident site, and he displayed several clues of intoxication and admitted that he had been involved in an accident after leaving a bar. Based on these facts, the area where appellant was found was a suspicious place because the police reasonably could have believed, based on the surrounding circumstances, that appellant drove while intoxicated and was involved in a recent accident nearby and needed to be detained because he had fled the scene of that accident. *See id.*; *see also Gallups v. State*, 151 S.W.3d 196, 201–02 (Tex. Crim. App. 2004) (concluding defendant's home, where he

13

was arrested for driving while intoxicated shortly after leaving his wrecked vehicle at the scene of an accident, was a suspicious place).

Because the circumstances show that appellant was found in a suspicious place under article 14.03(a)(1), we conclude that the trial court did not err in refusing to submit a jury question regarding whether appellant's arrest was illegal because he was found in a suspicious place.[7] We overrule appellant's second issue.[8]

### *Conclusion*

Having concluded the evidence is legally sufficient to support the jury's finding that appellant drove while intoxicated, appellant was not in custody when he made the statements he sought to suppress, and appellant was found in a suspicious place, we affirm the judgment of the trial court.


/s/     Martha Hill Jamison
Justice


Panel consists of Justices Jamison, Busby, and Donovan (Donovan, J., concurring).
Do Not Publish — Tex. R. App. P. 47.2(b).

---

[7] We need not and do not decide whether appellant would be entitled to a jury question on whether he was found in a suspicious place if there were a fact question on this issue.

[8] Because we conclude that the trial court did not err in denying appellant's motion to suppress and request for a jury instruction, we do not reach appellant's third issue complaining that these actions by the trial court resulted in harmful error.